# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ENVIRONMENTAL INTEGRITY
PROJECT, *et al.*,

        *Plaintiffs*,

    v.

ANDREW R. WHEELER, *et al.*,

        *Defendants*,

    &

AMERICAN FARM BUREAU FEDERATION,
*et al.*,

        *Proposed Intervenors-*
        *Defendants*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:20-cv-1734 (KBJ)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED BUSINESS INTERVENORS' MOTION TO INTERVENE AS DEFENDANTS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND .......................................................................................................................6

ARGUMENT ...........................................................................................................................8

    A.      The Proposed Business Intervenors Possess Standing..........................................10

    B.      Proposed Business Intervenors Are Entitled to Intervene as of Right...................15

          1.      The proposed Business Intervenors' motion to intervene is timely...........15

          2.      The proposed Business Intervenors have a significant interest that may be impaired or impeded by this litigation. ........................................16

          3.      The agency defendants do not adequately represent the proposed Business Intervenors' interests. ...............................................................18

    C.      Alternatively, the Proposed Business Intervenors Should Be Allowed to Intervene Permissively..............................................................................................19

CONCLUSION.........................................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alphapointe v. Dep't of Veterans Affairs*,
  2019 WL 7290853 (D.D.C. 2019) ........................................................18

*Coal. of Ariz./N.M. Ctys. v. Dep't of Interior*,
  100 F.3d 837 (10th Cir. 1996) ...........................................................17

*Continental Transfer Technique, Ltd. v. Federal Government of Nigeria*,
  2019 WL 3562069 (D.D.C. 2019) ........................................................16

*Crossroads Grassroots Policy Strategy v. FEC*,*
  788 F.3d 312 (D.C. Cir. 2015) ................................................11, 12, 16, 18

*Cty. of San Miguel, Colo. v. MacDonald*,
  244 F.R.D. 36 (D.D.C. 2007)..............................................................12

*EEOC v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998).........................................................19

*Feller v. Brock*,
  802 F.2d 722 (4th Cir. 1986) ............................................................17

*Fund for Animals, Inc. v. Norton*,*
  322 F.3d 728 (D.C. Cir. 2003)....................................................9, 16, 18

*Georgia v. Pruitt*,
  326 F. Supp. 3d 1356 (S.D. Ga. 2018)....................................................7

*Georgia v. Wheeler*,
  418 F. Supp. 3d 1336 (S.D. Ga. 2019)..................................................4, 7

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)........................................................................14

*Hodgson v. United Mine Workers of Am.*,
  473 F.2d 118 (D.C. Cir. 1972)............................................................9

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977).......................................................................10

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Karsner v. Lothian*,
532 F.3d 876 (D.C. Cir. 2008) ................................................................................15

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*,
2020 WL 380824 (U.S. July 8, 2020) ........................................................................9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................10

*Military Toxics Project v. EPA*,\*
146 F.3d 949 (D.C. Cir. 1998) .........................................................................10, 11

*Nat. Res. Def. Council v. Wheeler*,
955 F.3d 68 (D.C. Cir. 2020) ..................................................................................14

*Nat. Res. Defense Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1997) ................................................................................19

*Nat'l Ass'n of Mfrs. v. Dep't of Defense*,
138 S. Ct. 617 (2018) ................................................................................................3

*Nat'l Lime Ass'n v. EPA*,
233 F.3d 625 (D.C. Cir. 2000) ................................................................................13

*Navistar, Inc. v. Jackson*,
840 F. Supp. 2d 357 (D.D.C. 2012) ........................................................................15

*North Dakota v. EPA*,
127 F. Supp. 3d 1047 (D.N.D. 2015) ........................................................................7

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agriculture*,
797 F.3d 1087 (D.C. Cir. 2015) ..............................................................................14

*S.C. Coastal Cons. League v. Pruitt*,
2018 WL 2184395 (D.S.C. May 11, 2018) ............................................................4, 5

*Safari Club Int'l v. Salazar*,
281 F.R.D. 32 (D.D.C. 2012) ..................................................................................16

*Texas v. EPA*,
389 F. Supp. 3d 497 (S.D. Tex. 2019) ....................................................................3, 7

*Town of Chester v. Laroe Estates, Inc.*,
137 S. Ct. 1645 (2017) ............................................................................................10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) ............................................................................................18

*Utah Ass'n of Ctys v. Clinton,*
    255 F.3d 1246 (10th Cir. 2001) ........................................................................17

*Va. House of Delegates v. Bethune-Hill,*
    139 S. Ct. 1945 (2019) ..................................................................................9, 10

*Virginia v. Ferriero,*
    2020 WL 3128948 (D.D.C. June 12, 2020) ......................................................9

*Wildearth Guardians v. Salazar,*
    272 F.R.D. 4 (D.D.C. 2010) ..............................................................13, 15, 18

**Statutes, Rules and Regulations**

80 Fed. Reg. 37,054 (June 29, 2015) ....................................................... *passim*

82 Fed. Reg. 34,899 (July 27, 2017) .....................................................................7

83 Fed. Reg. 5200 (Feb. 6, 2018) ..........................................................................4

84 Fed. Reg. 56,626 (Oct. 22, 2019) ........................................................ *passim*

85 Fed. Reg. 22,250 (Apr. 21, 2020) ........................................................ *passim*

Fed. R. Civ. P. 24 ...................................................................................... *passim*

**Other Authorities**

Compl., *Chamber of Commerce v. EPA,*
    No. 15-cv-386 (N.D. Okla. July 10, 2015) ........................................................3

Compl., *Chesapeake Bay Found., Inc. v. Wheeler,*
    1:20-cv-1064 (D. Md. Apr. 27, 2020) ...............................................................8

Compl., *Murray v. Wheeler,*
    No. 1:19-cv-01498 (N.D.N.Y. Dec. 4, 2019) ....................................................8

Compl., *New Mexico Cattle Growers' Ass'n v. EPA,*
    No. 1:19-cv-988 (D.N.M. Oct. 22, 2019) ..........................................................8

Compl., *New York v. Wheeler,*
    No. 1:19-cv-11673 (S.D.N.Y. Dec. 20, 2019) ...................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Compl., *SCCCL v. Wheeler*,
   No. 2:19-cv-3006 (D.S.C. Oct. 23, 2019) ....................................................................8

Mr. Bryon Anderson, Comment on 2020 Rule (April 3, 2019),
   https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-3205; .......................11

Newmont Mining Corporation, Comment on 2020 Rule (April 15, 2019),
   https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4768; .......................11

North American Coal Corporation, Comment on 2020 Rule (April 25, 2019),
   https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-5463 ...........................

Opinion and Order, *Nat. Res. Def. Council v. EPA*,
   No. 1:18-cv-1048 (S.D.N.Y. Feb. 6, 2018)................................................................4

Opinon and Order, *New York v. Pruitt*,
   No. 1:18-cv-1030 (S.D.N.Y. Apr. 5, 2018) ...........................................................4, 5

Opposition to Summary Judgment, *Georgia v. Wheeler*,
   No. 2:15-cv-0079 (S.D. Ga. Oct. 10, 2018)...............................................................19

Opposition to Summary Judgment, *Texas v. EPA*,
   No. 3:15-cv-162 (S.D. Tex. Nov. 8, 2018) ...............................................................19

Order, *Am. Farm Bureau Fed'n v. EPA*,
   No. 3:15-cv-165 (S.D. Tex. Sept. 12, 2018) ...............................................................7

Order, *Puget Soundkeeper All. v. McCarthy*,
   No. 2:15-cv-1342 (W.D. Wash. Nov. 25, 2019)........................................................4, 9

Order, *S.C. Coastal Conservation League v. Wheeler*,
   No. 2:19-cv-3006 (D.S.C. Feb. 19, 2020)................................................................4, 8

Order, *SCCCL v. Wheeler*,
   No. 2:20-cv-01687 (D.S.C. June 11, 2020) ...............................................................8

Supplemental Am. Compl., *Washington Cattlemen's Ass'n v. EPA*,
   No. 2:19-cv-00569 (W.D. Wash. Dec. 20, 2019) ......................................................8

Supplemental Compl., *Pierce v. EPA*,
   No. 0:19-cv-2193 (D. Minn. Oct. 22, 2019) ...............................................................8

Transcript of the February 27, 2019 Public Hearing on Proposed Rule: *Definition
   of Waters of the United States* at 127-28 (Feb. 27, 2019),
   https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-11775 .....................11

## INTRODUCTION

Plaintiffs' Complaint challenges a final agency action by the Environmental Protection Agency and the U.S. Army Corps of Engineers (together, the "agencies") promulgating a definition of Waters of the United States ("WOTUS") within the meaning of the Clean Water Act ("CWA"). *See* The Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) ("2020 Rule"). The fifteen proposed Business Intervenor trade groups represent the parties directly regulated by this definition: countless businesses that own or use land for a broad variety of business purposes including farming, ranching and other livestock production, forestry, manufacturing, mining of all types, oil and gas production and refining, power generation, road and other infrastructure construction, and home and commercial building. They represent between them a large portion of the Nation's economic activity.[1]

---

[1]      Each of proposed Business Intervenors was formed to advocate for regulatory standards and policies that enable the success of the industry members that they represent. *See* American Farm Bureau Federation ("AFBF"), https://www.fb.org (explaining that AFBF is the "voice of agriculture" formed to represent farm and ranch families); American Petroleum Institute ("API"), https://www.api.org/about (explaining API "represents all segments of America's oil and natural gas industry," with the mission to promote "a strong, viable U.S. oil and natural gas industry"; American Road & Transportation Builders Association ("ARTBA"), https://www.artba.org/about (explaining that ARTBA represents the transportation construction industry with the "core mission" of "market development and protection on behalf of the U.S. transportation and design construction industry"); Chamber of Commerce of the United States, https://www.uschamber.com/about (explaining that the U.S. Chamber is "the world's largest business organization representing companies of all sizes" formed to advocate for pro-business policies on the behalves of these members); Edison Electric Institute ("EEI"), https://www.eei.org/about/mission/Pages/default.aspx (explaining that EEI represents all U.S. intervenor-owned electric companies with the mission to promote the long-term success of the electric power industry); Leading Builders of America ("LBA"), https://leadingbuilders.org (explaining that LBA represents "many of the largest homebuilding companies in North America" with the purpose "to preserve home affordability for American families … by becoming actively engaged in issues that have the potential to impact home affordability"); National Alliance of Forest Owners ("NAFO"), https://nafoalliance.org (explaining NAFO is committed to advancing federal policies that support the long-term economic, social, and environmental benefits of sustainably managed, privately owned forests on behalf of its member companies that own and manage more than 43 million acres of private working forests ); National Association of Home Builders ("NAHB"), https://www.nahb.org (explaining NAHB represents more than 140,000 builder and associate members in all 50 states with the purpose of protecting housing opportunities for all and working to achieve the professional success of its members); National Cattlemen's Beef Association ("NCBA"), https://www.ncba.org/about (explaining that NCBA represents more than 175,000 American cattle producers with the goal to "advance the economic, political, and social interests of the U.S. cattle business"); National Corn Growers Association ("NCGA"), https://www.ncga.com (explaining NCGA represents nearly 40,000 corn farmers nationwide and the interests of more

Conducting these businesses often requires determining if property includes waters of the United States subject to CWA jurisdiction and hence to CWA permitting requirements, with the threat of criminal and civil liability if activity occurs in WOTUS without a permit. The 2020 Rule corrects years of regulatory uncertainty under which these parties previously operated, replacing unclear or bloated standards with bright lines. Parrish Dec. ¶¶ 49-55. Because their members, as well as their own organizational interests, stand to be significantly harmed if Plaintiffs succeed before this Court in their suit to vacate the 2020 Rule, the Business Intervenors seek to intervene as Defendants. They are singularly situated to explain the harms that enjoining the 2020 Rule would cause to American industry, and they bring substantial experience regarding WOTUS jurisdiction.

The 2020 Rule culminates more than five years of multiple administrative rulemakings and varied litigation, in which the proposed Business Intervenors have participated at every step. They have done so by submitting comments on every proposed rule, including the 2020 Rule (*see* Parrish Dec. ¶¶ 17 n.2, 20 n.3), lobbying (*id.* ¶¶ 11-12, 15-17), and litigating for a lawful, reasonable standard since the Administration issued a regulatory definition of WOTUS in 2015, *see* Clean

---

than 300,000 growers with the mission "to create and increase opportunities for corn growers to help them sustainably feed a growing world."); National Mining Association ("NMA"), https://nma.org (explaining NMA is the voice for U.S. mining with a membership of more than 250 corporations and organizations involved in mining and with the mission to build support for public policies that advance full and responsible utilizations of coal and mineral resources); National Pork Producers Council ("NPPC"), http://nppc.org/about-us (explaining NPPC is the global voice for the Nation's approximately 60,0000 pork producers with the mission to "fight[] for reasonable legislation and regulations" that protect the livelihood of pork producers); National Stone, Sand, & Gravel Association ("NSSGA"), https://www.nssga.org (explaining NSSGA is the leading advocate for the aggregate industry on behalf of its members—stone, sand and gravel producers—with the goal of promoting policies that protect the safe and environmentally responsible use of aggregates); Public Lands Council ("PLC"), publiclandscouncil.org (explaining PLC represents cattle and sheep producers with the mission to advocate for western ranchers); U.S. Poultry & Egg Association, https://www.uspoultry.org  (explaining the association is the world's largest and most active poultry organization with the mission to serve as the voice for the feather industries) (all sites last visited May 18, 2020).

Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) ("2015 Rule"). Proposed Business Intervenors, among other things:[2]

- Challenged the jurisdiction of the U.S. Court of Appeals for the Sixth Circuit to hear consolidated petitions for review of the 2015 Rule, obtained certiorari from the Sixth Circuit's decision that it had jurisdiction, and then prevailed on the merits in the Supreme Court on their argument that those challenges (and now challenges to the 2020 Rule) belong in the first instance in district courts. *See Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617 (2018).

- Filed suit in the U.S. District Court for the Southern District of Texas, arguing that the 2015 Rule was unlawful and inconsistent with the text of the CWA because it covers a staggering amount of land that Congress never intended to reach and also was procedurally defective under the Administrative Procedure Act. The District Court agreed that the 2015 Rule was procedurally defective and remanded the Rule to the agencies. *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019).

- Filed suit in the District of Oklahoma to challenge the 2015 Rule. Compl., *Chamber of Commerce v. EPA*, No. 15-cv-386 (N.D. Okla. July 10, 2015) (Dkt. 1), on appeal *sub nom. Oklahoma v. EPA*, 19-5055 (10th Cir. 2016).

- Intervened as plaintiffs in the Southern District of Georgia to challenge the lawfulness of the 2015 Rule, and obtained a ruling that the Rule was both

---

[2]     Not every proposed Intervenor has been a party in each one of the cases described below, but each of the Business Intervenors has been involved in some of those cases, and most of the Business Intervenors have been involved in all of them as either a party or an *amicus*.

3

substantively and procedurally defective and a remand of the Rule to the agencies. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019).

- Intervened as defendants and obtained dismissal of claims in the Western District of Washington challenging the 2015 Rule's provisions as to waste water treatment facilities. Order, *Puget Soundkeeper All. v. McCarthy*, No. 2:15-cv-1342 (W.D. Wash. Nov. 25, 2019) (Dkt. 103).

- Intervened as defendants in suits by States and environmental organizations in the Southern District of New York and District of South Carolina that challenged regulatory efforts to delay enforcement of the 2015 Rule. *See* Definition of "Waters of the United States" – Addition of an Applicability Date to 2015 Clean Water Rule, 83 Fed. Reg. 5200 (Feb. 6, 2018) ("Applicability Date Rule"); *S.C. Coastal Cons. League ("SCCCL") v. Pruitt*, 2018 WL 2184395 (D.S.C. May 11, 2018); Order at 2, *New York v. Pruitt*, No. 1:18-cv-1030 (S.D.N.Y. Apr. 5, 2018) (Dkt. 57); Order at 2, *Nat. Res. Def. Council v. EPA*, No. 1:18-cv-1048 (S.D.N.Y. Feb. 6, 2018) (Dkt. 48).

- Intervened to defend a 2019 Rule repealing the 2015 Rule. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019) ("Repeal Rule"); Order, *S.C. Coastal Conservation League v. Wheeler*, No. 2:19-cv-3006 (D.S.C. Feb. 19, 2020) (Dkt. 33).

In other words, the proposed Business Intervenors have been at the very heart of litigation over the 2015 Rule and subsequent delay and repeal efforts. *See* Parrish Dec. ¶¶ 19-24.

These prior cases are closely interconnected with the current challenge to the 2020 Rule. Each considers the legality of administrative actions regarding the same provisions of the CWA

defining the scope of federal jurisdiction and the same long history of rulemaking and judicial decisions. Each addresses the lawful scope of the agencies' authority under the CWA to regulate land and waters, and affects the ability of industry and private parties, like proposed Business Intervenors' members, to use their land without obtaining a CWA permit. As several courts recognized in granting many of the same proposed Business Intervenors' motions to intervene, the proposed Business Intervenors and their members "have a substantial stake in the outcome" of litigation determining the regulatory definition of WOTUS, in part because "the industries that these business groups represent operate in a regulatory sphere that include regulations governing water usage in the United States." *SCCCL*, 2018 WL 2184395, at *8-9; *see also* Order at 2, *New York*, No. 1:18-cv-1030 ("the industry groups have demonstrated a serious economic interest in the [WOTUS] rule, as it regulates discharge into waterways").

The same is true here. The lawsuit before this Court will determine under which regulatory regime the proposed Business Intervenors' members must operate. And Plaintiffs' ultimate objective—and the logical result of vacating the 2020 Rule (which Plaintiffs claim will "remov[e] CWA protection from vast numbers of waterbodies" (Compl. ¶ 31))—is to return to a broader definition of WOTUS and greater federal regulation.[3] Accordingly, as Plaintiffs' allegations show, a ruling in favor of Plaintiffs would subject private parties like the proposed Business Intervenors' members to more burdensome regulatory requirements and inhibit their productive use and enjoyment of their lands. Further, were Plaintiffs to succeed on their claim that the 2020 Rule is an illegal interpretation under the CWA (*id.* ¶¶ 144-154), or arbitrarily disregards prior practices

---

[3]     As Plaintiffs acknowledge, the 2019 Repeal Rule has been challenged in many courts. *See* Compl. ¶ 98 n.8. As a result, it is unclear whether the 2015 Rule or prior regime including the 2008 Guidance would ultimately be in effect (or where, given the injunctions entered against the 2015 Rule). Either prior regime would harm Intervenors' members compared to the 2020 Rule, because each creates broader and more uncertain federal jurisdiction.

and findings allegedly requiring a broader scope (*id.* ¶¶ 155-67), any such holding would have direct bearing on the tangled web of litigation regarding the lawful scope of the agencies' jurisdiction, a question present in each and every WOTUS-related suit, including the pending 2020 Rule and Repeal Rule suits in South Carolina in which the Business Intervenors are intervenor-defendants.

The Court should therefore grant Movants leave to intervene to protect their interests in this and other related litigation. The proposed Business Intervenors have standing; the motion is timely; the proposed Business Intervenors members, as owners or users of land for a huge variety of business purposes, have regulatory and economic interests in the agencies' action that will be impaired if they cannot defend it; and the agencies, as neutral regulatory bodies, cannot represent the interests of the regulated business community with the same perspective and vigor. The Business Intervenors believe that their experience operating under the CWA and various regulatory regimes implementing it, and their close involvement in every stage of recent rulemaking and litigation, will be helpful to the Court in resolving this case. The motion to intervene as of right or permissively accordingly should be granted.

## BACKGROUND

The 2015 Rule purported to "clarify" the definition of WOTUS within the meaning of the CWA. 80 Fed. Reg. at 37,0554. Because the agencies' regulatory jurisdiction extends to "waters of the United States" and no more, the definition of WOTUS establishes the scope of the agencies' regulatory jurisdiction under the CWA. The sweeping reach of the 2015 Rule stood to significantly impair business operations; thus, many of the proposed Business Intervenors (along with various

coalitions of States) challenged the legality of the 2015 Rule through original suits and also litigated the lawfulness of the 2015 Rule or aspects of that rule as intervenors in various forums.

As a result of these challenges, various courts issued regional preliminary injunctions guarding against application of the 2015 Rule in more than half of the States. *See* Order, *Am. Farm Bureau Fed'n v. EPA*, No. 3:15-cv-165 (S.D. Tex. Sept. 12, 2018) (Dkt. 87); *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1364-65 (S.D. Ga. 2018); *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1060 (D.N.D. 2015). The Southern District of Texas and Southern District of Georgia both ultimately held that the 2015 Rule violated the procedural requirements of the APA. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019); *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019). The Southern District of Georgia further held that the 2015 Rule is inconsistent with the CWA. *Georgia*, 418 F. Supp. 3d at 1381-82. Both of those courts remanded the Rule to the agencies in light of the ongoing administrative process to repeal and replace the 2015 Rule, keeping their previously issued preliminary injunctions in place. *Id.*; 389 F. Supp. 3d at 506.

While the litigation was ongoing, the agencies proposed to repeal and replace the 2015 Rule in a "comprehensive, two-step process." *See* Definition of "Waters of the United States" – Recodification of Pre-Existing Rules, 82 Fed. Reg. 34,899, 34,899 (July 27, 2017). The first step of this comprehensive process would "rescind" the 2015 Rule, restoring the status quo ante by regulation. *Id.* "In a second step," according to the agencies, the government would "conduct a substantive reevaluation of the definition of 'waters of the United States.'" *Id*. During the ongoing rulemaking, the 2015 Rule entered effect in the jurisdictions that did not issue preliminary injunctions to guard against it, and thus American businesses were forced to operate under a patchwork regulatory scheme. Parrish Dec. ¶¶ 24-25.

7

The agencies published the final Repeal Rule in the Federal Register on October 22, 2019. 84 Fed. Reg. 56,626. The Repeal Rule was immediately subject to legal challenge by States and environmental groups in district courts across the United States, including in an action before the District of South Carolina in which proposed Business Intervenors successfully intervened. Compl., *SCCCL v. Wheeler*, No. 2:19-cv-3006 (D.S.C. Oct. 23, 2019) (Dkt. 1).[4]

The agencies published the final 2020 Rule, the subject of this action, on April 21, 2020. Plaintiffs filed this Complaint on June 25, 2020 seeking to declare that the 2020 Rule is unlawful and to vacate and set it aside. *See* Dkt. 1. To protect against the serious harms that vacation of 2020 Rule would cause to their members' livelihoods, productive use of their land, and ability to conduct business (*see* Parrish Dec. ¶¶ 56-65), as well as the impact that any adverse ruling would cause to the Business Intervenors' pending WOTUS cases and ability to litigate for a lawful definition of WOTUS on behalf of their members, the Business Intervenors file the present motion to intervene.[5]

## ARGUMENT

Pursuant to Rule 24(a)(2), a district court must grant leave to intervene where (1) the application is timely; (2) the movant "claims an interest relating to the property or transaction that is the subject of the action" and "is so situated that disposing of the action may as a practical

---

[4]     All of the proposed intervenors except the Chamber of Commerce are intervenors in that case. Additional challenges to the Repeal Rule include: Compl., *Chesapeake Bay Found., Inc. v. Wheeler*, 1:20-cv-1064 (D. Md. Apr. 27, 2020) (Dkt. 1); Compl., *New York v. Wheeler*, No. 1:19-cv-11673 (S.D.N.Y. Dec. 20, 2019) (Dkt. 1); Supp. Am. Compl., *Washington Cattlemen's Ass'n v. EPA*, No. 2:19-cv-00569 (W.D. Wash. Dec. 20, 2019) (Dkt. 60); Compl., *Murray v. Wheeler*, No. 1:19-cv-01498 (N.D.N.Y. Dec. 4, 2019) (Dkt. 1)*; Compl., New Mexico Cattle Growers' Ass'n v. EPA*, No. 1:19-cv-988 (D.N.M. Oct. 22, 2019) (Dkt. 1); Supp. Compl., *Pierce v. EPA*, No. 0:19-cv-2193 (D. Minn. Oct. 22, 2019) (Dkt. 12).

[5]     The 2020 Rule is challenged in district courts across the country. All of the Business Intervenors were granted intervention in proceedings challenging the 2020 Rule before the District of South Carolina. Order, *SCCCL v. Wheeler*, No. 2:20-cv-01687 (D.S.C. June 11, 2020) (Dkt. 29). All of the proposed intervenors have additionally moved to intervene to defend their interests in *California v. Wheeler*, 3:20-cv-03005 (N.D. Cal. May 1, 2020), and most have sought intervention in *Colorado v. EPA*, Case No. 1:20-cv-01461 (D. Colo. May 22, 2020). Those motions are pending.

matter impair or impede the movant's ability to protect its interest;" and (3) existing parties do not adequately represent that interest. *See* Fed. R. Civ. P. 24(a)(2); *see Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 731 (D.C. Cir. 2003). "The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when *all* parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.,* 473 F.2d 118, 130 (D.C. Cir. 1972) (emphasis added).

Even where intervention is unavailable as of right, the Court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Courts in this circuit have also required an intervenor to demonstrate standing. *See, e.g.*, *Virginia v. Ferriero*, 2020 WL 3128948, at *2 (D.D.C. June 12, 2020). The proposed Business Intervenors respectfully submit as "interven[ors] in support of *defendants* in the trial court" who do not seek any different or additional relief, the proposed Business Intervenors "d[o] not need to establish standing." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019) (emphasis in original); *see also id.* at 1951 (because an intervenor in support of defendants in the trial court is not "invoking the court's jurisdiction," it is not "incumbent on the [intervenor] to demonstrate its standing"); *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 2020 WL 380824, at * 8 n. 6 (U.S. July 8, 2020) (the Third Circuit "erred by inquiring into [intervenors'] independent Article III standing" to defend an agency rule where intervenors sought no relief "broader than or different from" the United States, which clearly

possessed standing) (citing *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017)). To the extent that any decision after *Bethune Hill* suggests otherwise, the proposed Business Intervenors respectfully submit that such decisions are contrary to this Supreme Court precedent. But regardless, the proposed Business Intervenors in an abundance of caution demonstrate here that they possess standing.

### A.    The Proposed Business Intervenors Possess Standing.

A party meets the constitutional requirements for standing when it pleads a concrete and particularized injury-in-fact that is caused by the challenged conduct and redressable by a decision in its favor. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Here, the proposed Business Intervenors possess associational standing to sue on behalf of their members.

An organization has associational standing to intervene on the behalf of its members when "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Military Toxics Project v. EPA*, 146 F.3d 949, 953-54 (D.C. Cir. 1998), quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

First, as the directly regulated parties that stand to suffer concrete and particularized injuries should Plaintiffs receive the relief that they seek in this action, the proposed Business Intervenors' members possess standing. *See Lujan*, 504 U.S. at 561 (explaining that if "the plaintiff is himself an object of the action . . . there is ordinarily little question that the [government] action" caused him sufficient injury). Accordingly, the D.C. Circuit has recognized that "sufficient injury-in-fact" generally exists in exactly the situation here—"where a party benefits from agency action,

the action is then challenged in court, and an unfavorable decision would remove the party's

benefit." *Crossroads Grassroots Policy Strategy v. FEC,* 788 F.3d 312, 317 (D.C. Cir. 2015); *see

also Military Toxics Project*, 146 F.3d at 954 (association of chemical manufacturers had standing

to intervene on behalf of regulated members that benefitted from challenged EPA rule).

The proposed Business Intervenors' members own or operate on real property and must

comply with the CWA's prohibition against unauthorized "discharges" into any areas on their land

that are deemed jurisdictional.[6] Parrish Dec. ¶¶ 15, 57. As such, they are regulated parties that

benefit from the clear, reasonable standards and categorical exceptions in the 2020 Rule. Parrish

Dec. ¶¶ 49-55. If, as Plaintiffs request, this Court holds the 2020 Rule an unlawful application of

the CWA because it "categorically exclude[es]" waters from the Act's jurisdiction that Plaintiffs

think should be covered (Compl. ¶¶ 151-52), the agencies' jurisdiction would expand and the

---

[6]     While standing for one intervenor is sufficient to support standing for all, *see Military Toxics*, 146 F.3d at 954, for further explanation regarding the harms that an expansion of WOTUS jurisdiction causes to members of each of the proposed Business Intervenors members, *see* Parrish Dec. ¶ n.2 (proposed Business Intervenor comments regarding the 2015 Rule), *id.* ¶ 20 n.3 (proposed Business Intervenor comments regarding the 2020 Rule). Members also participated in public hearings regarding the proposed 2020 Rule. For example, Mr. Jerry Passman, an individual member of NAHB, participated to explain the key importance of a clear definition of WOTUS and the 2020 Rule's elimination of the significant nexus test to builders such as himself. *See* Transcript of the February 27, 2019 Public Hearing on Proposed Rule: *Definition of Waters of the United States* at 127-28 (Feb. 27, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-11775. And Todd Hays, a member of NPPC, explained how the former WOTUS regime was unclear. *Id.* at 104. Several individual members also submitted individual comments regarding the 2020 Rule. *See, e.g.,* Mr. Bryon Anderson (individual member of NAHB), Comment on 2020 Rule (April 3, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-3205; Newmont Mining Corporation (individual member of NMA), Comment on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4768; North American Coal Corporation (individual member of NMA), Comment on 2020 Rule (April 25, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-5463. Further demonstrating the serious and concrete injuries that vacatur of the 2020 Rule—and corresponding expansion of WOTUS jurisdiction and return to an unclear, chaotic regulatory regime—stands to impose are declarations of proposed Business Intervenors' members explaining harms caused by an expanded definition of WOTUS under the 2015 Rule. *See* Parrish Dec. Ex. D, at 8 (declaration of James Coody, individual member of NAHB), 23 (declaration of Chris Hawkins, individual member of ARTBA), 34 (declaration of Kent Mann, individual member of NCBA), 40 (declaration of Alan G. Parks, individual member of Memphis NSSGA), 122a (declaration of Robert E. Reed, individual member of AFBF), 52 (declaration on behalf of Devon Energy Corporation, a member of NAM and API). Exhibits D and E to the Parrish Declaration include numerous additional declarations of individual members describing such harms.

Business Intervenors' members would face greater regulatory burdens, costs, interference with business activities on their land, as well as greater exposure to potential lawsuits and liability. *See* Parrish Dec. ¶¶ 56-65. Members would be required to obtain additional costly permits to conduct business, take land out of production, or else abandon some projects altogether. *Id.* The CWA subjects them to criminal penalties and civil suits for failure to comply. As this Court has previously determined, such allegations of an "expected increase in regulatory restrictions on their members' use of [their] private land … and a reduction in the profitability of their members' business concerns, constitute concrete and imminent injuries." *Cty. of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 44 (D.D.C. 2007).

Additionally, a ruling in favor of Plaintiffs would eliminate the clarity that the 2020 Rule provides through bright line exemptions, replacing it with uncertainty that in turn imposes greater costs and liability risk on the Business Intervenors' members. *See* Parrish Dec. ¶¶ 56-65. In promulgating the 2020 Rule, the agencies explained that the Rule "is intended to establish categorical bright lines that provide clarity and predictability for regulators and the regulated community." 85 Fed. Reg. at 22,325. A declaration that the 2020 Rule is unlawful would deprive the proposed Business Intervenors of those intended benefits.

Causation and redressability directly follow from these conclusions, because "the injuries-in-fact that the intervenor-applicants' members claim that they will suffer are fairly traceable to the judicial intervention" here, setting aside the challenged agency act, and "it is likely that a decision favorable to the intervenor-applicants would prevent their members from incurring … increased regulatory restrictions ... and a reduction in the profitability of their members." *Cty. of San Miguel*, 244 F.R.D. at 44–45; *see also Crossroads*, 788 F.3d at 316 (causation and

redressability "rationally follow[ed]" when party seeking to intervene to defend agency ruling demonstrated injury should a challenge to that agency ruling succeed).

Second, the interests the proposed Business Intervenors' seek to protect are germane to their organizational purposes of advancing the interests of the respective industries that they represent. On this prong, "mere pertinence between litigation subject and organizational purpose is sufficient." *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000) (internal quotation marks omitted). Each of the proposed Business Intervenors was formed to promote the interest of the industries that they represent, including through promoting a friendly regulatory climate. *See supra* p.1 n.1. A regulation that sets the scope of how far the CWA reaches to regulate industry activity on private land carries broad implications for construction, transportation, real estate, mining, manufacturing, forestry, agriculture, and energy industry members, and is thus clearly germane to the purposes of the industry trade associations established to advocate for the interests of those businesses. *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4 (D.D.C. 2010) (holding that suit regarding regulation of coal leasing germane to the national trade organization for the mining industry).

The acute interests of their members in the definition of WOTUS is evidenced by the fact that each of the proposed Business Intervenors has devoted substantial resources for years toward lobbying and litigating for a reasonable scope of CWA jurisdiction. *See* Parrish Dec. ¶¶ 10-24.  The proposed Business Intervenors have submitted comments on every iteration of the proposed WOTUS rule. *See* Parrish Dec. ¶¶ 17 n.2, 20 n.3. Many of them participated in forming the Waters Advocacy Coalition with the purpose of advocating for a reasonable definition of WOTUS. *Id.* ¶¶ 11, 14. They have also participated in the litigation regarding the lawful scope of

the regulatory definition of WOTUS under the CWA at virtually every stage and in many courts, including the United States Supreme Court. Parrish Dec. ¶¶ 10-24. Throughout these significant, multi-fronted efforts, they have consistently argued against a definition of WOTUS that violates the Constitution and unlawfully expands the agencies' regulatory jurisdiction under the CWA, and explained the need for regulatory predictability and consistency and a uniform approach, rather than a regulatory definition that imposes significant and unjustified costs on their members. *Id.* The 2020 Rule is the long-awaited conclusion of the agencies' efforts to repeal and replace the 2015 Rule with lawful and clear standards. Plainly, CWA regulation of industry members' use of their land is highly relevant to the national trade associations formed on behalf of each of those respective industries.

Third, participation of individual members is not necessary in this lawsuit, because the Proposed Business Intervenors do not "seek[] any individualized relief nor bring[] claims dependent on any individual member's factual circumstances." *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 77 (D.C. Cir. 2020). Even if this Court chooses to apply a standing requirement, the proposed Business Intervenors clearly have met it.[7]

---

[7] Separately, the proposed Business Intervenors meet the requirements of organizational standing to bring suit in their own rights. Courts "conduct the same inquiry as in the case of an individual" to determine whether an organization has standing on its own behalf. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982). An organization has standing where it faces a "'concrete and demonstrable injury to [its] activities—with [a] consequent drain on the organization's resources.'" *See People for the Ethical Treatment of Animals v. U.S. Dep't of Agriculture*, 797 F.3d 1087, 1093 (D.C. Cir. 2015), quoting *Havens*, 455 U.S. at 379. Under this analysis, courts in the D.C. Circuit consider if the challenged act harms the organization's interests, and whether the organization used its resources to counteract that harm. *Id.* at 1094. A ruling in favor of Plaintiffs would impede the proposed Business Intervenors' organizational missions to advocate for clear WOTUS regulatory standards that promote the success of their industry members, whose operations are critically sensitive to the scope of federal CWA jurisdiction. *See supra*, p. 1 n.1; Parrish Dec. ¶¶ 2-6, 10-12. It would further undermine their years of litigation and lobbying for a lawful standard: They have expended significant resources to attempt to counteract the harm caused by an unlawful, broad definition of WOTUS. Parrish Dec. ¶¶ 13-24, *supra* p. 13. Should the 2020 Rule be set aside, the proposed Business Intervenors would be required to expend more costly and resource-consuming efforts to again advocate for a lawful, reasonable definition of WOTUS.

**B.      Proposed Business Intervenors Are Entitled to Intervene as of Right.**

The proposed Business Intervenors meet each requirement for intervention as Defendants

as of right under Rule 24(a).

1.      *The proposed Business Intervenors' motion to intervene is timely.*

Courts in the D.C. Circuit evaluate timeliness "in consideration of all the circumstances,

especially weighing the factors of time elapsed since the inception of the suit, the purpose for

which intervention is sought, the need for intervention as a means of preserving the applicant's

rights, and the probability of prejudice to those already parties in the case." *Karsner v. Lothian,*

532 F.3d 876, 886 (D.C. Cir. 2008). Under any reasonable application of these criteria, the

proposed Business Intervenors' motion is timely.

First, the time elapsed is minimal. This motion comes fewer than three weeks after

Plaintiffs filed their Complaint on June 25, 2020. *See* Dkt. 1; *Navistar, Inc. v. Jackson*, 840 F.

Supp. 2d 357, 361 (D.D.C. 2012) (intervention timely where sought "less than two weeks after

Defendants filed their responsive pleadings, and before any discovery or substantive progress had

been made in the case"). Second, the proposed Business Intervenors seek to intervene for the

proper purpose of protecting their significant interest in the scope of CWA jurisdiction, the topic

of this lawsuit. Third, denying intervention would prevent the movants from protecting their

members' interests against damaging over-regulation and preserving both their own regulatory

gains encapsulated in the 2020 Rule and their abilities to advocate for a reasonable CWA

jurisdictional standard. Finally, intervention at this early stage will result in no prejudice. The

litigation is in its infancy. The proposed Business Intervenors agree to file and respond to

dispositive motions on the same schedule as the agencies. *See Wildearth Guardians*, 272 F.R.D.

at 15 (explaining parties "cannot credibly claim" prejudice where motion to intervene filed before the defendants responded to the operative version of the complaint). Under all four criteria, the Business Intervenors' motion is timely.

2.   *The proposed Business Intervenors have a significant interest that may be impaired or impeded by this litigation.*

Because their members have established injury-in-fact and causation, the proposed Business Intervenors have demonstrated that they possess a significant interest which may be impaired in this litigation. *Safari Club Int'l v. Salazar*, 281 F.R.D. 32, 38 (D.D.C. 2012) ("The injury-in-fact and causation connection with the challenged action requirements for standing are closely related to the second and third factors under Rule 24(a)."); *Crossroads*, 788 F.3d at 320 ("the standards for constitutional standing and the second factor of the test for intervention as of right are the same"). To recap, the interest at stake is clear: The definition of WOTUS dictates the regulatory scheme under which the proposed Business Intervenors' members must operate. An unfavorable ruling would heighten their regulatory burdens, increase their costs of business, seriously impact their use of private land, and thrust them back into the regulatory chaos that the 2020 Rule corrects.

It easily follows that their interests stand to be impaired. "In determining whether 'disposing of the action may as a practical matter impair or impede' the intervening petitioner's interest, the 'practical consequences of denying intervention' are dispositive." *Continental Transfer Technique, Ltd. v. Federal Government of Nigeria*,  2019 WL 3562069, at *4 (D.D.C. 2019) (citation omitted) (quoting *Fund for Animals*, 322 F.3d at 735). A ruling in favor of the Plaintiffs would both directly increase the regulatory burdens under which Plaintiffs' members must operate and obstruct efforts to return back to a narrower standard. It would roll back

regulatory gains that the proposed Business Intervenors have fought for years to obtain on behalf

of their members through lobbying, litigation, and other efforts. Indeed, this lawsuit could wipe

clean all of that work and replace it with precedent that impedes their ability to advocate for a

reasonable regulatory standard.

To illustrate, the outcome of this litigation will impact the litigation in which most of the

Business Intervenors participate to defend the 2019 Repeal Rule and prevent the re-introduction

of the 2015 standard. A final judgment here will bear directly on the issues involved in that

litigation; and the scope of any final judgment in this Court may further complicate the

regulatory landscape in ways relevant to the relief being considered in Repeal Rule suits. The

outcome here could also conflict with decisions in other challenges to the 2020 Rule in district

court in South Carolina, in which the Business Intervenors intervened, as well as in the District

of Colorado and the Northern District of California, where their motions to intervene are

pending. And any ultimate restoration of the 2015 Rule would also affect the Business

Intervenors' suits involving that Rule in courts around the country, which either remain open or

may need to be revived under Federal Rule Civil Procedure 60(b). Courts recognize that

intervention is warranted under such circumstances. *See Utah Ass'n of Ctys v. Clinton*, 255 F.3d

1246, 1254 (10th Cir. 2001)  ("'the *stare decisis* effect of the district court's judgment is

sufficient impairment for intervention'") (quoting *Coal. of Ariz./N.M. Ctys. v. Dep't of Interior*,

100 F.3d 837, 844 (10th Cir. 1996)); *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986) ("an

interest in preventing conflicting orders may be sufficient for intervention as of right").

Given the proposed Business Intervenors' long history of advocating for a reasonable,

bright line definition of WOTUS such as that contained in the 2020 Rule (Parrish Dec. ¶¶ 10-24),

the benefits of the 2020 Rule for the proposed Business' Intervenors' members, and Plaintiffs' stated objective of enjoining the 2020 Rule and replacing it with a broader standard, the proposed Business Intervenors have demonstrated a sufficient interest that may be impaired by the litigation.

        3.    *The agency defendants do not adequately represent the proposed Business Intervenors' interests.*

The proposed Business Intervenors cannot rely on the agencies to represent their interests. To satisfy this "minimal" burden under Rule 24(a), a movant need only demonstrate "'that representation of [its] interest 'may be' inadequate." *Fund for Animals,* 322 F.3d at 735 (*quoting Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)). The D.C. Circuit "'look[s] skeptically on government entities serving as adequate advocates for private parties,'" especially when a private party has a "financial interest in the outcome of [the] action that the government does not share." *Alphapointe v. Dep't of Veterans Affairs*, 2019 WL 7290853, at \*1 (D.D.C. 2019) (quoting *Crossroads*, 788 F.3d at 321).

Certainly the agencies' interests in the management of natural resources is not concomitant with the interests of the proposed Business Intervenors in using their land for productive economic purposes. That is enough. "[G]overnmental entities generally cannot represent the 'more narrow … financial interest' of a private party that is not burdened with the responsibility of balancing multiple competing public interests." *Wildearth Guardians*, 272 F.R.D. at 17 (quoting *Fund for Animals,* 322 F.3d at 737 (internal quotation marks omitted).

In addition, there is a risk that a change in Administration or policy could undermine the agencies' resolve to defend the merits of the 2020 Rule—exactly what happened in litigation regarding the 2015 Rule before the Southern District of Georgia and the Southern District of Texas.

18

In both litigations, the agencies ultimately took no position regarding the merits of the 2015 Rule because of the agencies' ongoing rulemaking, such that only intervenor-environmental parties briefed those issues on summary judgment. *See* Opposition to Summary Judgment, *Texas v. EPA*, No. 3:15-cv-162 (S.D. Tex. Nov. 8, 2018) (Dkt. 170); Opposition to Summary Judgment, *Georgia v. Wheeler*, No. 2:15-cv-0079 (S.D. Ga. Oct. 10, 2018) (Dkt. 215). The proposed Business Intervenors also believe that their experience in the prior litigation, and their singular ability to brief issues related to the harm to American businesses and industry, will assist the Court in resolving this action. *See Nat. Res. Defense Council v. Costle,* 561 F.2d 904, 912-913 (D.C. Cir. 1997) ("experience and expertise" in relevant fields can assist in informed resolution in challenge to EPA regulation).

## C.   Alternatively, the Proposed Business Intervenors Should Be Allowed to Intervene Permissively.

Rule 24(b) provides that a court has considerable discretion to allow a party to intervene if it "has a claim or defense that shares with the main action a common question of law or fact" and intervention will not cause undue delay or prejudice. Fed. R. Civ. P. 24(b); *see also EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("[P]ermissive intervention is an inherently discretionary enterprise.").

Because the proposed Business Intervenors seek to defend the 2020 Rule challenged here, it cannot be seriously disputed that the defenses the proposed Business Intervenors seek to bring will involve common questions of law and fact regarding the agencies' obligations under the CWA and the APA. The proposed Business Intervenors' defenses against the Plaintiffs' Complaint will involve common questions of law and fact regarding the Federal Defendants' obligations under the CWA and the APA. Permitting the proposed Business Intervenors to intervene to defend the

2020 Rule would also allow them to vindicate their substantial interests and, given their prompt action, would neither delay this case nor prejudice any of the parties.

## CONCLUSION

For the foregoing reasons, the proposed Business Intervenors respectfully request that the Court grant the motion to intervene.

Dated this 14th day of July, 2020

*/s/ Adam C. Sloane*
Adam C. Sloane (D.D.C. Bar Number 443272)
Timothy S. Bishop* (D.C. Bar 449645)
Colleen M. Campbell** (D.C. Bar 219082)
Mayer Brown LLP
1999 K Street NW 20006
Washington, DC
Telephone: (202) 263 3000
Facsimile: (202) 263 3300
Email: asloane@mayerbrown.com
        tbishop@mayerbrown.com
        ccampbell@mayerbrown.com

Brett E. Legner* (IL Bar Number 6256268)
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone:  (312) 701 7829
Facsimile:  (312) 706 8607
Email: blegner@mayerbrown.com

*Attorneys for proposed Business-Intervenors Defendants*

*\* pro hac vice pending*
*\*\* admission application pending*